# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CAUSE NO.: 1:17-CR-69-HAB |
| IVAN JAIMES-MOLINA | |

## OPINION AND ORDER

The Defendant, Ivan Jaimes-Molina, is awaiting sentencing on his plea of guilty to possessing with intent to distribute more than 50 grams of methamphetamine, a violation of 21 U.S.C. § 851(a)(1). The Government has agreed, in a written plea agreement, to dismiss Count 2 of the Indictment, charging Defendant with unlawful possession of a firearm by a prohibited person, which Defendant was by virtue of his status as an illegal alien. *See* 18 U.S.C. § 922(g)(5).

The probation officer drafted a Presentence Investigation Report (PSR) in preparation for sentencing. The Defendant has lodged two objections to the PSR. He also asserts that he is eligible for the Safety Valve provision of U.S.S.G. § 5C1.2 and that a term of imprisonment below the advisory Guideline range is sufficient but not greater than necessary to meet the purposes of punishment. The Government contends that the objections should be overruled, and that the application of the enhancements thus render Defendant ineligible for the Safety Valve.

## BACKGROUND

During the course of a late-night traffic stop on November 29, 2017, Sgt. Todd McCormick searched the trunk of the vehicle Defendant had been driving. In the spare

tire compartment of the trunk, he found two packages of drugs. Later testing confirmed that they contained 361.7 grams of marijuana and 398.6 grams of 100% pure methamphetamine. As Sgt. McCormick was using his knife to try to look inside the packages, Defendant, who had been standing only a couple feet away watching the search, lunged at Sgt. McCormick and two-hand shoved him in the chest. The force caused Sgt. McCormick to move backwards, including part way down an embankment. Defendant fled on foot. He was later found and arrested.

Also located in the tire compartment area next to the packages of drugs, was a box containing a Sig Sauer P938 pistol with two unloaded magazines and a gunlock. It appeared to have powder residue on the outside of the frame and inside the chamber of the firearm.

During Defendant's change of plea hearing on March 28, 2019, the Magistrate Judge discussed the terms of Defendant's written Plea Agreement. This included the parties' agreement that "for purposes of applying the United States Sentencing Guidelines: to the Drug Quantity Table in U.S.S.G. §2D1.1, that the amount of controlled substances involved in my offense of conviction including relevant conduct was at least 150 grams but less than 500 grams of methamphetamine (actual); and that a dangerous weapon (including a firearm) was possessed." (Plea Agreement ¶ 8.c.iii, ECF No. 52.)

The PSR records a base offense level of 32 under U.S.S.G. § 2D1.1 based on the quantity of drugs. Further, because Defendant possessed a Sig Sauer P938 firearm, which was located in the same tire compartment as the drugs, the probation officer applied a two-level increase to the base offense level under § 2D1.1(b)(1). It was increased an

2

additional two levels under § 2D1.1(b)(2) on grounds that Defendant used violence when he "lunged at [Sgt. McCormick] (who had a knife in his hand to open the drug packages), grabbed him, and shoved him backwards, which caused [Sgt. McCormick] to fall partially down an embankment." (PSR ¶ 23.) After receiving the reductions for acceptance of responsibility, Defendant's adjusted total offense level was 33. Combined with a criminal history category of I, Defendant's advisory Guideline range, as currently calculated is 135 to 168 months. The statutory mandatory minimum term of imprisonment is ten years. *See* 21 U.S.C. § 841(b)(1)(A).

**ANALYSIS**

**A.    Section 2D1.1(b)(1)**

Defendant lodges two challenges to the enhancement under § 2D1.1(b)(1), which applies to a drug offense "if a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). First, he argues that the firearm, in addition to meeting the definition of a "firearm," must meet the definition of a "dangerous weapon." Defendant contends that the firearm was not dangerous at the time of the traffic stop because it was unloaded, and there was no ammunition readily available with which to load it. Second, he asserts that, although the firearm was inside the vehicle he was operating, it is clearly improbable that the weapon was connected with the drug offense because the gun was unloaded and inaccessible.

In advancing the position that the firearm was not connected to drug trafficking, Defendant considers it significant that the Government did not charge him with violating 18 U.S.C. § 924(c), possession of a firearm in furtherance of drug trafficking. The Court

3

takes a moment to dispel any thought that § 924(c) and § 2D1.1(b)(1) are co-extensive. *See United States v. Berkey*, 161 F.3d 1099, 1102 (7th Cir. 1998) (explaining the differences between § 924(c) and § 2D1.1(b)(1)); *United States v. Carmack*, 100 F.3d 1271, 1279–80 (7th Cir. 1996) (same). "The criminal offense requires proof that the defendant 'used' or 'carried' the weapon in the course of the drug offense, while an enhancement under § 2D1.1(b)(1) is appropriate for simple, and entirely passive, possession." *United States v. Booker*, 115 F.3d 442, 443 (7th Cir. 1997) (internal citation omitted); *see also Berkey*, 161 F.3d at 1102 (stating that the enhancement did not require the government to "show that the defendant used the firearm during the commission of a drug sale, but only that he possessed the firearm during the offense that led to the conviction, or during relevant conduct, as defined by U.S.S.G. § 1B1.3," which is a "relatively low threshold"). There can be no doubt that § 2D1.1(b)(1) "casts a wider net than § 924(c)." *Carmack*, 100 F.3d at 1280.

Moreover, a conviction under § 924(c) would have required the Government to prove the elements of the offense beyond a reasonable doubt. *United States v. Thomas*, 294 F.3d 899, 906 (7th Cir. 2002) (noting that the Government would have to prove use of the firearm beyond a reasonable doubt). In contrast, the preponderance of the evidence standard applies to facts that are relevant to sentencing. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). Additionally, for the particular enhancement at issue, Defendant has a burden of persuasion if the Government first shows "by a preponderance of the evidence that the

4

defendant possessed a firearm in a place where drugs were present[.] [T]he adjustment should be applied unless it is clearly improbable that the weapon was connected with the offense." *Booker*, 115 F.3d at 443 (quotation marks, brackets, and ellipses omitted); U.S.S.G. § 2D1.1 Application Note 11.

Here, the firearm was transported in the same compartment of the vehicle as were distribution quantities of methamphetamine and marijuana. At the point in time when Defendant stopped his vehicle and retrieved the drugs, he would have also had access to the firearm. The Court agrees with the Government's argument that, whether unloaded or even inoperable, a gun could be displayed or carried to convey a warning to those who might contemplate stealing the drugs. Also, nothing prevented Defendant from obtaining ammunition before or upon reaching his destination of distribution activity. The mere act of displaying the gun, loaded or not, in connection with the possession of drugs could have prompted a violent response, and thus "increased [the] danger of violence"—the very concern the enhancement is intended to address. U.S.S.G. § 2D1.1(b)(1) Application Note 11.A. There is no language in § 2D1.1(b)(1) requiring that the defendant used, intended to use, or was poised to use the weapon because "[t]he weapons enhancement reflects the Sentencing Commission's general determination that the possession of weapons by drug traffickers increases the danger of violence." *United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir. 1996).[1]

---

[1] The Court would note that, even for § 924(c) offenses, whether the gun is loaded is only one of the factors that is helpful in determining whether a gun was possessed in furtherance of the drug crime. *See United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005).

The facts of this case are much different from the Sentencing Commission's example of when a firearm, although present, would not be connected to the offense: "if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." § 2D1.1(b)(1) Application Note 11.A. In the example, it is not merely the fact that the weapon was unloaded that made it clearly improbable that it was connected to the drug offense. It was the type of weapon (a hunting rifle) and where it was located (in a home owner's closet), in combination with being unloaded, that made it clearly improbable that the weapon was connected to the drug offense and increased the danger of violence.

By contrast, "[g]uns found in close proximity to illegal drugs are presumptively considered to have been used in connection with the drug trafficking offense." *United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999); *see also United States v. Corral*, 324 F.3d 866, 873 (7th Cir. 2003) (citing the Seventh Circuit's position that "guns found in close proximity to drug activity are presumptively connected to that activity"); *United States v. Johnson*, 227 F.3d 807, 814 (7th Cir. 2000) (The "proximity of a weapon to drug proceeds provides a sufficient nexus to conclude that it was not clearly improbable that the gun was connected with the offense.") (internal quotations omitted)). Defendant, who has not offered any evidence, has not persuaded the Court that there was any other reason for the presence of the gun with the drugs. *Cf. United States v. Corral*, 324 F.3d 866, 873 (7th Cir. 2003) ("There is no other explanation for the presence of the gun in that apartment than to utilize it in connection with the drug activity taking place inside.") While a loaded firearm would have arguably increased the danger of violence even more, the distinction

is one of degrees. It is not, under the facts of this case, a reason to find that Defendant has met his burden to show that it was clearly improbable that the pistol was connected to the drug trafficking offense.

Finally, the Court is not persuaded by Defendant's arguments related to the definitions of "firearm" and "dangerous weapon." The Sig Sauer was a firearm because it was "(i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device." U.S.S.G. § 1B1.1 Application Note 1(H). It was also a "dangerous weapon," whose definition, which follows, is much broader:

> (i)an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

*Id.* Application Note 1(E); *see also id.* Application Note 1(H) ("A weapon, commonly known as a 'BB' or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm."). Certainly, if creating the appearance of gun with one's hand meets the definition of a dangerous weapon, an unloaded firearm is a dangerous weapon.

For these reasons, the Court finds that application of the enhancement under § 2D1.1(b)(1) is applicable and overrules Defendant's objection.

**B.     Section 2D1.1(b)(2)**

Defendant disputes the PSR finding that, when he pushed Sgt. McCormick, he "used violence" as is required for the application of the enhancement under § 2D1.1(b)(2). According to Defendant, he was attempting "to disengage from the officer." (Sentencing Mem. 5, ECF No. 67.) He continues:

> At no time did the Defendant intend any harm to Deputy McCormick, nor did Deputy McCormick suffer any harm, pain, or was placed in any danger. To whatever extent it can be said that Deputy McCormick was shoved, he was shoved away from traffic not towards it. While, Deputy McCormick may have temporarily lost his balance, he did not lose his feet or fall to the ground.

(*Id.* at 5–6.)

The background commentary to § 2D1.1 provides that subsection (b)(2) implements the directive to the Sentencing Commission in § 5 of Public Law No. 111–220, also known as the Fair Sentencing Act (FSA)[2]. § 2D1.1(b)(2), comment. (backg'd). Section 5 of the FSA directs the Sentencing Commission to "review and amend the Federal sentencing guidelines to ensure that the guidelines provide an additional penalty increase of at least 2 offense levels if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." FSA, Pub. L. 111-220, § 5, 124 Stat. 2372. Accordingly, in amending § 2D1.1 to create the violence enhancement, the Commission explained that § 2D1.1(b)(2) was a new specific

---

[2] The Fair Sentencing Act of 2010 is most commonly known for reducing the crack cocaine versus powder cocaine disparity in federal sentences and eliminating mandatory minimum sentences for simple possession offenses. It also directed the United Sentencing Commission to amend the Guidelines to account for specified aggravating and mitigating circumstances that placed increased emphasis on a defendant's role in a drug trafficking offense.

8

offense characteristic that implemented § 5 of the FSA. Supplement to the 2010 Guidelines Manual, App. C, Amend. 748, at 43 (Nov. 1, 2010) (quoting § 5 of the FSA).

The Guidelines do not define "use of violence." At least one Circuit Court has attached a definition to "use of violence." *See United States v. Peneda-Duarte*, 933 F.3d 519 (6th Cir. 2019). In doing so, the court noted that traditional canons of statutory construction guide interpretation of the Guidelines. *Id.* at 523 (first citing *United States v. Babcock*, 753 F.3d 587, 591 (6th Cir. 2014); then citing *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011)). So, too, in the Seventh Circuit:

> When interpreting a specific provision of the sentencing guidelines, we "begin with the text of the provision and the plain meaning of the words in the text." *United States v. Hill*, 645 F.3d 900, 907–08 (7th Cir. 2011) (quoting *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005)). As part of this analysis, we also consider the guideline's application notes, which "are considered part of the guidelines rather than commentary on the guidelines." *United States v. Rabiu*, 721 F.3d 467, 471 (7th Cir. 2013).

*United States v. Cook*, 850 F.3d 328, 332 (7th Cir. 2017).

Because the Sentencing Commission has not included a definition of violence, dictionaries can fill the interpretive gap. *Pineda-Duarte*, 933 F.3d at 523 (noting the Supreme Court's use of Webster's New International Dictionary for a definition of the word "physical" and Black's Dictionary for a definition for the word "force" in *Johnson v. United States*, 559 U.S. 133, 138–39 (2010)). *See also United States v. Turchen*, 187 F.3d 735, 738–39 (7th Cir. 1999) (approving of district court's examination of definitions from various dictionaries and other sources to determine whether Guideline sentencing enhancement applied).

> As defined in contemporary dictionaries, "violence" means "[t]he use of physical force, [usually] accompanied by fury, vehemence, or outrage; [especially] physical force unlawfully exercised with the intent to harm," violence, Black's Law Dictionary (10th ed. 2014), or "the use of physical force so as to injure, abuse, damage, or destroy," violence, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/violence (last visited June 24, 2019).

*Pineda-Duarte*, 933 F.3d at 523. The court also noted that, while the precedential backdrop for § 2D1.1(b)(2) in the case law was "not robust, the definition of 'violence' does not seem to be in dispute." *Id.* The court determined that violence, as used in § 2D1.1(b)(2), "encompasses acts where one uses physical force with intent to injury, regardless whether an injury actually occurs." *Id.* Thus, application of the enhancement required an inquiry into whether a defendant formed the requisite intent. *Id.* at 525.

The Court has viewed the in-car video footage of the traffic stop, particularly the moment when Defendant pushed Sgt. McCormick. The Court cannot say that the shove, while a use of physical force, was the use of violence as intended for the § 2D1.1(b)(2) enhancement. It is difficult to attach the requisite intent to injure to Defendant's actions. Faced with the discovery of the drugs and imminent arrest, Defendant made the decision to flee. Because he stood a mere step away from Sgt. McCormick, his attempt to evade arrest involved creating separation from Sgt. McCormick. Given Sgt. McCormick's stature, it is unlikely that Defendant believed or intended that his push would injure or harm Sgt. McCormick. Defendant himself moved backwards at the point he made contact with Sgt. McCormick. The only reason Sgt. McCormick was displaced to any significant degree from the spot he was standing was due to the slope of the grassed embankment behind him. While Sgt. McCormick was momentarily off balance while he was on the

embankment, he was able to keep his footing and immediately return to the shoulder of the road.

The Court does not believe that this is the type of conduct that Congress had intended when it directed the Sentencing Commission to ensure that the guidelines provide an additional penalty if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense, i.e., those who demonstrated a propensity for violence in connection with their drug trafficking activity. *Cf. United States v. Lewis-Zubkin*, 907 F.3d 1103, 1104 (8th Cir. 2018) (enhancement applied where defendant paid another co-conspirator $100 to carry out beatings on other co-conspirators she believed were working with law enforcement); *United States v. Sykes*, 854 F.3d 457, 460–61 (8th Cir. 2017) (credible threat of violence where defendant said he was going to find and shoot an individual who allegedly stole from him and confronted the individual with a firearm); *United States v. Fernandez*, 636 F. App'x 71, 74 (2d Cir. 2016) (enhancement supported by evidence indicating defendant had shot victim after argument about using victim's apartment for drug operation and evidence that he told the building superintendent who notified police of the drug activity that he would "go up in there and would stab everybody up"); *United States v. Walker*, 578 F. App'x 812, 820 (11th Cir. 2014) (sufficient evidence of both the use of violence and the threatened use of violence where defendant threatened to kill at least one co-conspirator and her daughter and punched her in the neck for conduct related to the conspiracy, and threatened to hurt another coconspirator if she failed to properly dispose of evidence of drug manufacturing); *United States v. Williams*, Case Nos. 3:14-CR-091-JD; 3:16-CV-372-JD, 2017

WL 1384218, *8 (N.D. Ind. Apr. 17, 2017) (enhancement applied where defendant kidnapped and beat another individual to recover drugs, money, and a firearm that the individual had stolen from him).

Defendant's objection to an enhancement under § 2D1.1(b)(2) is sustained. The PSR will be revised accordingly.

**C.    Safety Valve Provision**

The Safety Valve provision, U.S.S.G. § 5C1.2, directs the Court to disregard any statutory minimum sentence for defendants who meet certain criteria. Having determined that Defendant possessed a firearm in connection with the offense, he is not eligible for the Safety Valve. U.S.S.G. § 5C1.2(a)(2) (providing that one of the criteria is that the defendant did not "possess a firearm or other dangerous weapon . . . in connection with the offense").

**CONCLUSION**

For the reasons stated above, the Court OVERRULES Defendant's objection to the enhancement under § 2D1.1(b)(1) and SUSTAINS the objection to the enhancement under § 2D1.1(b)(2). Defendant is not eligible for the Safety Valve, § 5C1.2. The Court will consider the arguments related to the appropriate sentence to impose pursuant to 18 U.S.C. § 3553(a) at the time of sentencing, and after Defendant has had an opportunity to address the Court.

SO ORDERED on September 9, 2019.

                                           *s/ Holly A. Brady*
                                           JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT